Thank you, Your Honor. Good morning. May it please the Court, Sharon Turman for the appellant, Maria Escriba. With me at council table is my colleague, Elizabeth Christin. I will be addressing Ms. Escriba's appeal. Ms. Christin is prepared to address Foster Farms' cross-appeal on rebuttal. We would like to reserve three minutes for rebuttal, if we may. The one and only reason the district court gave for denying Ms. Escriba's renewed motion for judgment as a matter of law was that she gave insufficient notice of her need for FMLA leave. That was a reversible error because Ms. Escriba did everything the law required to invoke her rights under the Act when she told her employer she needed to leave work because her father was ill and in the hospital in Guatemala. That notice triggered Foster Farms' legal duties to designate her time off as FMLA, advise her in writing in her own language of her rights and responsibilities under the law, and to protect her job. It is undisputed that the company failed to meet those duties. Foster Farms is trying to escape liability here by manufacturing an intent requirement in the FMLA where none exists. Under this theory, which the district court erroneously adopted, an employer could avoid its legal duties based on a mere inference that the employee didn't really want the protections of the Act. Counsel, may I ask you, is it your position that this case should have never been tried before a jury? Yes, it is, Your Honor. We had submitted a motion for partial summary judgment. The notice question never should have gone to the jury. It was uncontested from the beginning in this case that defendant did not dispute that Ms. Escriba told them the reason for her leave, and that's all that this Court and the Department of Labor Regulations require, that an employee give notice of the need for leave for a qualifying reason. Now that the case has gone to a jury and the jury rendered a verdict that was adverse to your client, what do we do with that? Your Honor, it's our position that this case must be reversed because that was a legal error. There was notice. Without question, she gave notice under this Court's clear claim. Well, it's a factual issue that you think is uncontested. Your Honor, the issue of notice, as the Sixth Circuit in Cavan v. Honda held, is a mixed question of fact and law. Adequacy, certainly, but I mean. Sorry, Your Honor? Never mind. Go ahead. So to be sure, there are facts involved in the notice question, but those facts, as you point out, were undisputed here. And under the law of this circuit and under the plain text of the regulations, that qualified as legally valid notice. Well, they were disputed. I mean, both Linda Mendoza and there was an Ed Mendoza, right, both of whom were supervisors that she went to. And in both instances, they testified that she wanted two weeks' vacation time. Even though she gave the reason that she wanted to visit her ill father in Guatemala, the reason she gave was she just wanted two weeks' vacation time. Isn't that what they said? Your Honor, the evidence from defendant's point of view was that Ms. Escriba went to her supervisor, Linda Mendoza, and said, I need my vacation because my father is ill in Guatemala. Linda Mendoza testified that she said, do you need more time? And Ms. Escriba said, no, I think that should be okay. But it was undisputed that the very end of that conversation was Ms. Escriba saying, if I need more time, I'll have the doctor fax a note. And that after her conversation with Linda, she went to Ed, who is the superintendent and the boss of Linda, and said, I have these two weeks. My father is in the hospital in Guatemala. I need to go. What do I do if I need more time? That triggered the foster farm's duty to tell her, as is prescribed by the FMLA regulations, what her rights and responsibilities were under the Act. Notice of that sort is essential to the meaningful exercise of FMLA rights. And this Court has so held. In lieu, the failure to designate was deemed interference with the Act. The fact that she used the word vacation in making her request cannot be deemed a legally valid basis for inferring her intent to reject FMLA leave because the Act expressly provides that vacation, which is taken for a covered reason, is FMLA leave. But you know what? When she went, she – I understand from the record she had successfully invoked FMLA leave 15 times previous to this occasion. Had she not during the 18 years she worked there? Your Honor, during her long tenure at this company, bagging turkeys on the line at foster farms, she had a number of serious illnesses and injuries. She had a brain tumor removed. And, yes, she did take a number of those. And in each of those instances, she went to the human resources department, right, which handles the FMLA leave. The testimony was that when she had an illness or an injury, her doctor gave her a doctor's note. She dropped it off at the personnel office. They filled out the papers for her. Okay. So she knew to go to the personnel office. Here, she didn't go. She went to her supervisors, which are normally who you go to if you just want vacation time. Is that not what the record shows? Yes, Your Honor. Vacation time, under the record, you are supposed to go to your supervisor to ask for vacation time. And the FMLA allows you to ask for vacation for a covered reason and deems that request as a request for FMLA leave. That is clear under the regulations. When you ask for vacation or sick time or any time off work, whether it's paid or unpaid, that is FMLA leave. And the employer has a duty in all circumstances to treat that time off as FMLA leave and tell you promptly what your rights and responsibilities are and the consequences of not meeting those responsibilities. Wasn't there a question of fact as to whether she wanted vacation time or FMLA time? No, Your Honor. She wanted vacation time, and she wanted to be gone for a reason covered by the Act, which means she gave notice of her need for FMLA time. The Act expressly says that an employee can choose to apply accrued vacation during an otherwise qualifying FMLA leave, just as an employer can require the employee to ask for vacation time during FMLA leave. That benefits the employee because she gets to replace her wages during an otherwise unpaid leave, and it benefits the employer because it ensures that she won't have paid leave remaining after her FMLA time is exhausted. But what do we do with the fact that in 15 prior occasions when she requested FMLA leave, she went about it a different way than asking for vacation time, which sort of implies that when she wanted FMLA leave, she knew how to ask for it. And so it was not really notice of FMLA leave if she asked for vacation time. What do we do with that evidence? Do we disregard that? Your Honor, it's our position that that evidence never should have been admitted. It was totally irrelevant to the question of whether Ms. Escriba gave legally valid notice on this occasion. And the regulations specifically say that an employer may not deem notice invalid by virtue of an employee's failure to follow an internal company-specific procedure like going to HR. I understand that, but we do have that evidence that if we disagree with you regarding whether or not that evidence was relevant, could that evidence legitimately be used by the jury to determine whether or not there was valid notice? No, Your Honor, because the only theory that Foster Farms has advanced for that evidence is that it goes to show Ms. Escriba's intent whether to have her time off treated as FMLA leave. And under the circuit law, that is an irrelevant question. There is no requirement in the Act or in the voluminous regulations that an employee express an intent to have her time off treated as FMLA leave. To the contrary, all an employee needs to do is say, I need time off for this covered reason. Well, let me ask you this. She knew that she was expected back on December 10, 2007. Is that correct? Your Honor, she knew that was the date of her vacation. She knew that was the end of her vacation, but she testified that she – and this is undisputed. I'm just quoting from the page 18 of the district court opinion. It is undisputed that plaintiff knew that she needed to be back to work on December 10. I mean, you're not disputing that, are you? We are disputing that, Your Honor. We – the testimony was that she had the vacation slip for December 10, and that was – that was what she understood, that she'd been granted vacation for two weeks. Okay. But then she clearly was aware of the three – Foster Poultry's three-day no-show, no-notice rule, was she not? No. She knew of the existence of that rule, but she testified that she was relying on instructions she'd be given – she'd been given by Ed Mendoza. Now, those instructions were admittedly, under Foster Farms' own account, extremely vague, unwritten, not in her own language. He said that Mrs. Grieva said, what do I do if I need more time to tend to my ill father beyond the two weeks? And that he replied, you'll need to call and bring or send a note. But I did not tell her when to do either of those things. He admitted that. And under 825.301F, an employer is not entitled to take action against an employee for not meeting a responsibility that the employer was required to have put in the notice, in writing, in her own language, to make it absolutely clear what she needed to do to protect her job. That's the whole purpose of this statute. I'm looking at page 19 of the district court opinion. They're quoting from the record. Question. Why didn't you call your employer to let them know that you would not be coming back by the 10th? Answer. I just couldn't think about it. I didn't remember. Yeah. And, Your Honor, the full testimony was, I couldn't think clearly because I had buried my mother a year prior, and I saw that my father was very ill. This is on SCR 298. And she further testified that she was relying on Ed Mendoza's word. She was doing her very best. But as I listened to you today and I read the case, it's hard to fault the district court for saying, you know, there are a lot of different factual questions here, and this needs to go to a jury. So I gather you don't quarrel with any of the jury instructions. We were happy with the jury instructions, Your Honor. We just believed it was properly instructed. And the only trial error you contest is the admission of the evidence of the prior times when she went to HR, right? That's correct, Your Honor. So the only issue then is whether or not Judge Ishii should have sent it to the jury in the first place, right? It's our contention that it should not have gone to the jury. The judge, in his order, said defendant does not dispute the reason that it knew the reason for her leave. That should have been the end of the inquiry. The notice question should have been resolved on summary judgment. And it's undisputed that Foster Farms failed to meet its duties under the law. So, Mrs. Griffin. Well, I suspect it is disputed. Well, they've been. I doubt your opposing counsel is going to stand up and say, you got me, you got me. Fair enough, Your Honor. But Foster Farms admits that it did not designate her leave. It said nothing to her about family leave. In fact, Ed Mendoza said because she didn't use the words family leave, I didn't have to tell her about her rights. Linda Mendoza said if she had come to me and said I need time off to take care of my ill father, I would have processed it as a family leave. But because she said I need vacation to take care of my ill father, I didn't. And that cannot be consistent with the law. Counsel, may I ask you, is it your reading of the law and the regulations that every single time that a person asks for leave, that the written notice has to be given to the employee each and every time, even if it's consecutive, you know, one day later than the last time? If it's for the same purpose. So, for example, if it's an intermittent leave, the notice would only have to be given at the beginning of that leave. But for any new leave with new conditions and new reasons, the employer does have to give that notice. And that's critical to an employee's ability to effectuate the purpose of the act, to preserve her job. I see that I'm running out of time. I'd like to reserve the balance for rebuttal, if I may. Thank you. Your Honors, it's Carmen Zarlinga representing Foster Farms. I'd like to reserve one minute for rebuttal on the Cross appeal. The decision below was rendered by Judge Wanger. He would kill me if I didn't correct that. I think you said it was Judge Wanger. Yes, I did. And as soon as I said it, I realized my error. Well, he's retired, so. I actually have seen him since he was retired. Those are good judges, but they're not interchangeable. He's going to ask me about this appeal. There's multiple independent grounds on which the judgment of the district court should be affirmed here. I want to get a couple of procedural things out of the way. There was a question about summary judgment being denied. That wasn't appealed. The denial of summary judgment was not appealed. It was not assigned an error. No one's complaining about it. Once there's been a trial, that's out the window. Right. There was an assertion that we manufactured an intent argument, and that's a legal error. That's not in any of the briefs. But be that as it may, and this came up in oral argument about the jury instructions, the verdict form, which is probably even more important than the jury instructions, contains the following question, whether Maria Escriba provided sufficient notice of her intent to take a leave. That's a fact question. No one objected to this verdict form ever. So this verdict form is what the jury went by when they made their decision. Did that track the instruction? Did the instruction have the intent in there as well? Sure it did. Sure it did. And so, you know, I'm going to skip forward to the harm question, which we didn't spend much time on, and come back to the notice question later. But I just wanted to clarify those two things. Probably the easiest ground to affirm this judgment is the absence, the total absence of any harm or prejudice to the appellant in this case. It's an essential element of both the claims that are on appeal, the FMLA claim and the CFRA claim. And as the U.S. Supreme Court acknowledged in the Ragsdale v. Wolverine worldwide case, that is an essential element that the court is duty-bound to inquire into. There was a lengthy jury trial in this case. The judge pointed out it was a he said, she said case. I think that was a fair observation. Many, many times during Appellant's argument, she mentioned the word undisputed. There was virtually nothing undisputed in this case. It took six days of trial and 14 witnesses to get through it. It was — everything was in dispute, and credibility in this case was a major, major issue. The only thing we look at here is, was there evidence to support that was adequate to support the jury's conclusion, even if there was evidence going the other way? And all the inferences get drawn our way. All reasonable inferences from that evidence get drawn our way. There was plenty of evidence in the record that Ms. Escriba requested, received and confirmed in writing that she had an expected return-to-work date of December 10th of 2007. Judge Gilman asked the question, and I want to read the transcript. This is what Ms. Escriba said. This is her testimony question. You were supposed to return to work on December 10th, correct? Question. Answer, yes. That's at SER 292. That is Ms. Escriba's own testimony about when she was supposed to come back to work. She discussed her request for a vacation with three different supervisors. They all testified at the trial. Her return date was triple confirmed in English. It was confirmed in Spanish, and it was confirmed in writing, in a writing that Ms. Escriba signed, and in a writing that she said she understood. So she was supposed to be back to work on December 10th, plain and simple. She did not return to work on December 10th, nor did she call Foster Farms. Now, we talk – there was talk about the 3-day rule, but not much talk. That 3-day rule doesn't say you have to show up for work. It just says you have to call or show. It's called a no-show, no-call rule. So all she had to do was pick up a phone and dial ten numbers and call in and say, I'm not going to be there, and here's my reason, and she wouldn't have been fired. She didn't do that. She knew on December 5th that she wasn't going to come back on the 10th. So she – there was talk about calm deliberation. She had lots of time to think about when she was coming back, and she did not come to back – back to work on the 10th because she forgot. She says she forgot. Believe it or not, that's the record in the case. That's what she testified to. I just couldn't think about it. I didn't remember. So after several days of an unexcused absence from work, Foster Farms applied the same rule that applies to all their employees. She was gone for three days with no explanation, no call, and she was terminated for that reason, and she brought this lawsuit. So that's the reason you say there's no harm. She clearly was harmed. She lost her job she had had for 18 years. You're saying – The harm was not as a result of any violation of the FMLA. So that's what you're saying. That's what I'm saying. So let me read you the quote from the Ragsdale case. This is the U.S. Supreme Court when they're talking about what you're supposed to do with an FMLA case. The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions. To determine whether damages or equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had the circumstances been different. Consider, for example, when the employee would have returned to work after taking leave. So whether Foster Farms designated this as a vacation, whether they designated it as an FMLA leave, she was very clear with all the employees that she did not need more time, that she was coming back on the 10th, and she did come back on the 10th. This is sort of odd because I understand the record shows her daughter purchased her round-trip airfare to Guatemala, and she was to leave November 23 and not come back until December 27. And she never told Foster Farms one word about that. I was going to say, does the record explain why was she only asking for two weeks when she knew her return flight wasn't until December 27? No. The only thing in the record is that she was repeatedly asked, do you need more time? Please tell us if you need more time. In both English and Spanish, and three different witnesses, all supervisors, all testified, she said multiple times she did not need more time. So there's no explanation in the record for that. Nor under the Ragsdale case, did counsel ever ask Mrs. Scriba the question, if this had been designated as FMLA leave, would you have done anything different? And under the Ragsdale case, that's the end of the inquiry. There is no harm, and this is also what the jury found, and no prejudice as a result of the designation. The – in the appellant's brief, she says that, well, there is harm because the three-day rule wouldn't have applied if there was FMLA leave because that's the way Foster Farms does it. That is incorrect and wrong, and if I accomplish nothing else here today, if you don't hear me on anything, please, please, I respectfully ask you hear me on this. The three-day rule applies at Foster Farms on any kind of leave, whether it's a vacation, whether it's an FMLA leave, whether it's some other kind of leave. The testimony of Virginia Gonzalez was elicited by the appellant at trial. The question, if someone is on an approved leave of absence, the three-day rule doesn't apply. Isn't that right? The answer, it does apply once the time has expired. But her point was that if the FMLA leave had been properly granted, all – it would not have been a no-call, no-show because the – she would have been entitled to a longer period of time. It would have just rolled over to the FMLA maximum. What's your response to that? It would not have rolled over to the FMLA maximum because the regulations, the cases, and the policy of the company all say when you sign up for leave, you've got to say when you're coming back. It doesn't matter what kind of leave it is. You don't just get, I can be gone indefinitely. And we heard appellants talk about Ed Mendoza. Mrs. Scriba said, well, Ed Mendoza said I can come back whenever I want. I just need to bring a note. He denied that he said that. So to be clear, just to be clear, he denied at trial that he said she could come back whenever she wanted. That's not how you run a poultry factory with 15,000 employees. People have to come back a certain day. Now, if she was gone on a leave and she needed more time, she could have called in and gotten up to the 12 weeks, but she didn't. So I think the key thing, Your Honor, in this case is multiple, multiple people asked her, do you need more time? Are you sure you don't need more time? And she said she did not. I'm just sort of curious. I mean, you know, here she was for 18 years an employee. I assume the company was happy with her. And here she goes on leave, but not because she's taking a grand tour of Europe, but because her father is very ill in Guatemala. Did the company just feel like, well, tough luck, you didn't call, you didn't show, and you're out of there? Lots of evidence in the record on this. The three-day no-show, no-call rule is nondiscretionary. Everybody gets treated the same way. And in the Foster Farms factory, the large percentage of employees there are minorities. Multiple different minorities make up the workforce. So the rules don't have a lot of discretion built in them. And this rule gets applied to everybody. I think it's one way to do business. In a sense, it's a generous rule, and in a sense, it's a rigid rule. But it's generous in the sense, if you don't show up to work, you get three full days. So all you've got to do is make a phone call, and your job is protected. And she didn't do that. So it does put a slight burden on the employee, but there's no question that it applied equally to everybody all the time. So there was no proof presented by her that the company has sometimes waived this requirement? No proof presented. Not one iota of proof. So with that, I would like to turn to the notice question, which indeed is a question of fact, whether the employee wanted a vacation or wanted to go on leave. I don't know how that can't be a question of fact. The jury's determination was that Ms. Escriba didn't provide sufficient notice of her intent to take that leave, and that's supported by adequate evidence. And I submit that the judgment is a matter of law that Judge Wanger issued. Why would she not have wanted FMLE leave, knowing that it was due to the illness of her father? This is documented well in the Court's opinion, and it was documented in the testimony the Court cited in his opinion that one reason is that if you take your vacation first and then you go on leave, you're going to get 14 full weeks. You're going to get the 12 weeks under the FMLE plus the two additional weeks of vacation. However, if Ms. Escriba had just walked in and said, I want my FMLE leave, then that 12 weeks subsumes her two-week vacation. So she only gets a net of 12 weeks. So there is a reason why you would structure your leave this way. And Ms. Escriba, by any definition, was a prolific leave taker. So there's plenty of evidence that she took a lot of leave up to the maximum in many occasions. So that's the reason why you would want to do it that way. I submit to you on the notice question this notion that once Ms. Escriba said, I want to go on vacation, I'm going to take care of my father, you must designate it as FMLE leave. You never come back to the question. It's too rigid. It's not supported by a single case anywhere, and it's not supported by the regulations. After all the study that one does in a case like this and getting ready for argument, I would commend to you the Seventh Circuit's decision in Riggi v. SMC, that's Seventh Circuit in 2009. It's an eerily similar case to this case. The employee said, I need the next couple days off to care for my mother. I want to use vacation time. Even though I could apply for leave, I want to use my vacation time. The employee did not return to work for nine days, and he was fired pursuant to the employer's two-day rule. They had a two-day rule in the Riggi case. The employee's request, the Court held, did not trigger FMLE notice requirements. It was too ambiguous to trigger the affirmative duty to provide written materials. That's at 632F3rd at 410. But it did warrant a further inquiry through informal means. And this is what the regulation says. The employer, if there's any confusion at all, can conduct an inquiry through informal means, quote, unquote. And the Court said when the employee is unclear about whether he wants FMLE leave or not, the regulations stipulate that the employer, quote, will obtain any additional required information through informal means. We think this means that the employer must make a reasonable effort to clarify the employee's leave request, 632F3rd at 411. That's exactly what Foster Farms did in this case. They sat down with Mrs. Scribo with three different people to clarify what she wanted. She signed something in writing that clarified what she wanted, and it's clear as a bell. And that same rule should apply here as opposed to a new rule that basically says we don't look at the context, we don't look at the 15 leaves, we don't look at anything anybody said except that one sentence. Well, I don't know why we were in a trial for 7 days if that's the standard. It's just too rigid, and it's not consistent with the regulation. Were you going to address the cost issue? Well, I was just going to address it on rebuttal, because that's. Okay. You're down to 30 seconds. Do you want to reserve that time? Yeah, I'll reserve my 30 seconds to make a final comment. Thank you, Your Honor. Your Honor, one point of clarification. Our notice of appeal did mention the summary judgment denial, and the issues were exactly the same in the JMOL, and so they were purely addressed there. Foster. I thought our case law said that a summary judgment denial goes out the window once there's a verdict on trial. Which is why we addressed really the denial of JMOL in our briefing, Your Honor. Foster Farms Council mentions the Ragsdale decision. That case involved an employee who had taken 30 weeks of leave and could not prove that even if she had been given notice of the designation, she could have done anything differently because her medical condition precluded her from being able to return within 12 weeks. Here, it's undisputed. Mrs. Griba returned well within her 12-week allotment, and so she could have and would have taken advantage of her job-protected leave had she only been told, you have the right to take this time, not just your two-weeks vacation, but the entire time, and have your job protected. If Foster Farms had such a rule which permitted an employee an election, an option to elect not to have her time designated, it certainly didn't make employees aware of that rule. In fact, its own policy said to the contrary, that the company will require you to use your two-weeks vacation during your FMLA leave. And so the purpose of the notice requirement in the regulations is to make perfectly clear, this is in the Bockhelder ruling of this circuit, to make sure that employees can make their FMLA plans fully aware of their rights and obligations so that they have the opportunity to protect their jobs. That's the entire point of this statute. Judge Gilman mentioned, why didn't the company bring her back? In fact, the FMLA trumps the three-day rule. The FMLA and its obligations should have made this company said, we didn't do what we were supposed to do. She did what she was supposed to do. She told us the reason for her leave. We didn't recognize that. And under Lew and Bockhelder, that was interference with her rights under the law. The risk of confusion here needs to be borne by the employer, and the regulations could not be more clear that that is the case. The burden on employee is light. She tells her employer why she needs to leave. This is a case involving a woman who was a low-wage worker. She had a third-grade education. She didn't speak the language as a first language. She was entitled to be told specifically and very clearly in her own language. Mr. Farms points to a vacation slip that was written in English. It said nothing about the FMLA. In fact, the first sentence on that form said, we will not consider changes to your vacation within 30 days of your previously scheduled request. That didn't begin to discharge the company's duties under the Act. The FMLA is a basic minimum labor standard. Bockhelder Court recognized that. It's just like the minimum wage, just like child labor laws, health and safety laws. These rights cannot be waived. And in all circumstances, the regulations make plain it is the employer's duty to recognize a request for leave, advise the employer of her duties and rights, and to protect her job. And that didn't happen here, Your Honors. We request reversal in entry of judgment in Ms. Skraba's favor. Thank you, counsel. Thank you. Having no argument on the cross-appeal, then there's no rebuttal. So case is heard. It will be submitted for decision.
judges: Thomas, Gilman, Rawlinson